0342

Joseph Lee BROWN, Appellant, v. SOUTH CAROLINA INSURANCE COMPANY, Respondent.

(324 S. E. (2d) 641)

Court of Appeals

*Lee S. Bowers,* Estill, *for appellant.*

*W. Ray Berry,* of *Berry & Berry,* Columbia, *for respondent.*

Heard March 22, 1984.

Decided Dec. 18, 1984.

BELL, Judge:

This is a dispute over the existence of third-party liability insurance coverage for an automobile owned by Joseph Lee Brown. Brown alleges he was covered by the South Carolina Insurance Company at the time he had an accident with the automobile. The Insurance Company maintains there was no coverage, as Brown's policy had been cancelled for nonpayment of premium.

Brown's complaint alleges three causes of action: (1) breach of contract for failure to pay or defend a third-party claim against Brown; (2) negligence in failing to determine coverage or adjust a third-party claim against Brown; and (3) bad faith refusal to pay a third-party claim in willful and conscious disregard of Brown's rights under the policy. Brown seeks actual and punitive damages.

The Insurance Company answered the first cause of action denying liability. It demurred to the second and third causes of action for failure to state a claim. From an order of the circuit court sustaining the demurrers, Brown appeals. We affirm as to the second cause of action and reverse as to the third.

This case raises questions about the interrelation between contract and tort theories of liability when an insurance company refuses to pay a third-party liability claim.

The well pleaded allegations of the complaint set forth the following material facts. In October 1980, the Insurance Company issued a policy insuring Brown's Lincoln automobile against third-party liability. The policy required the Insurance Company to defend third-party claims for personal injury or property damage caused by the operation of the covered automobile. It was also required to indemnify the insured for sums he became legally obligated to pay to a third-party as damages up to the amount of the policy limits.

On December 26, 1980, while the policy was in full force and effect, Brown was involved in an accident with one Kenneth

Atkins. Atkins sued Brown for injuries caused by the accident. Brown reported the accident to the Insurance Company and submitted the suit papers to it for defense of Atkins's claim.

Initially the Insurance Company undertook to adjust the claim. Its adjuster prepared an accident report, obtained a release from Atkins, and wrote a draft for $2,061.36 to settle the claim. Before the claim was settled, however, the Insurance Company notified Brown the policy had been cancelled on December 22, 1980, for nonpayment of premium. It then refused to pay Atkins's claim or to defend the suit. Brown also alleges the Insurance Company accepted payment of a premium after the purported date of cancellation. In addition, he says the Company notified the South Carolina Department of Highways and Public Transportation he was not insured on the date of the accident. As a result, Brown was forced to defend the Atkins suit at his own expense. Moreover, the Highway Department suspended his operator's licence causing him to lose income.

### I.

Brown claims these alleged acts of the Insurance Company give rise to a cause of action for negligence. The circuit court concluded the alleged wrongful acts of the Insurance Company were violations of obligations arising solely from the contract of insurance. It held Brown's conclusory allegations of negligence could not convert a mere breach of contract into a tort. Therefore, it sustained the demurrer to the second cause of action.

Brown asserts this holding was in error. He argues the existence of a breach of contract does not preclude him from stating a cause of action in negligence. He contends the circuit court overlooked the fundamental point that "actions in tort often have their beginning in contractual matters." *St. Charles Mercantile Co. v. Armour & Co.*, 156 S. C. 397, 407, 153 S. E. 473, 477 (1930). For example, although the relationship of physician and patient may arise from contract, the physician is under a duty to exercise due care in diagnosing and treating the patient and his failure to do so will give rise to an action for negligence. Brown claims the relationship of insurer to insured presents an analogous situation.

To state a cause of action for negligence the plaintiff must allege facts which demonstrate the concurrence of three essential elements: (1) a duty of care owed by the defendant; (2) a breach of that duty by negligent act or omission; and (3) damage proximately resulting therefrom. *Bullard v. Ehrhardt*, 324 S. E. (2d) 61 (S. C. 1984); *Wannamaker v. Traywick*, 136 S. C. 21, 134 S. E. 234 (1926); *Gunter v. Graniteville Mfg. Co.*, 15 S. C. 443 (1881); *Jordan v. Jordan*, 220 Va. 160, 257 S. E. (2d) 761 (1979). Brown's difficulty lies with the first and second of these elements. He alleges the Insurance Company breached a duty of care owed to him (1) to determine coverage existed, by bringing a declaratory judgment action if necessary, and (2) to adjust a third-party claim.[1]

Negligent conduct becomes actionable only when it violates some specific legal duty owed to the plaintiff. *Hill v. Broad River Power Co.*, 151 S. C. 280, 148 S. E. 870 (1929); *LeLievre v. Gould*, [1893] 1 Q. B. 491, 497 (Lord Esher, M. R.); *Shubitz v. Consolidated Edison Co. of New York*, 59 Misc. (2d) 732, 301 N. Y. S. (2d) 926 (Sup. Ct. 1969). In circumstances where the law imposes a duty to act, a failure to act may constitute negligence. *Montgomery v. National Convoy & Trucking Co.*, 186 S. C. 167, 195 S. E. 247 (1938). The common law, however, is slow to impose affirmative duties in the absence of agreement. If the duty owed arises merely from agreement of the parties, breach of the duty is not negligence. The general rule was stated with clarity in *Kelly v. Metropolitan Railway Co.* [1895] 1 Q. B. 944, 947:

> [I]f the cause of complaint be for an act of omission or nonfeasance which without proof of a contract to do what has been left undone would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists), then the action is founded upon contract and not upon tort. If, on the other

---

[1] Significantly, Brown does not allege a negligent refusal to defend or settle a third party claim under the doctrine of *Tiger River Pine Co. v. Maryland Casualty Co.*, 163 S. C. 229, 161 S. E. 491 (1931). Instead, he argues: "The insurance company may not have had any duty to do anything in relationship to Atkins's claim against [Brown]. However, after accepting the premium, assuring [Brown] that he could be covered, the claim paid, and the proper state entities advised of his coverage, they owed . . . a duty to use due care in their dealing with [Brown]."

hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of contract, to take due care, and the defendants are negligent, the action is one of tort. . . .

(A. L. Smith, L. J.).

Our Supreme Court has repeatedly approved this principle. In *Meddin v. Southern Railway-Carolina Division*, 218 S. C. 155, 165, 62 S. E. (2d) 109, 112 (1950), the Court stated the law as follows:

> . . . [I]f the cause of action is predicated on the alleged breach, or even negligent breach, of a contract between the parties, an action in tort will not lie. On the other hand, where the contract creates a certain relationship between the parties, and certain duties arise by operation of law, irrespective of the contract, because of this relationship, then the breach of such duties warrants an action in tort.

*Accord Collopy v. Citizens Bank of Darlington*, 223 S. C. 493, 77 S. E. (2d) 215 (1953); *Dixon v. Texas Co.*, 222 S. C. 385, 72 S. E. (2d) 897 (1952); *Green v. Industrial Life & Health Ins. Co.*, 199 S. C. 262, 18 S. E. (2d) 873 (1942); *Felder v. Great American Ins. Co.*, 260 F. Supp. 575 (D. S. C. 1966) (applying South Carolina law). In other words, if the defendant's neglect results only in nonperformance of the contract and he is under no duty to act apart from the contract, he is not liable in negligence, but in contract.

In his second cause of action, Brown has alleged no more than failure to perform a duty imposed by contract. Absent a contract with Brown, the Insurance Company had no obligation to adjust, settle, or pay Atkins's claim against Brown. In itself, mere failure to complete the adjustment, even if willful or careless, did not breach a legal duty existing apart from the contract. While the Company's conduct of undertaking to settle the claim or accepting late payment of Brown's premium may be significant in proving a contract existed between the parties, that conduct standing alone is not an independent source of liability. If a contract existed, the mere failure to adjust Atkins's claim constitutes nothing more than nonperformance of a contractual obligation. It may give rise to an action for breach of contract, but it does

not constitute actionable negligence.[2]

Similarly, the law placed no duty on the Insurance ■ Company to forego a good faith claim that the policy had been cancelled prior to the accident. As long as the Company denied coverage in good faith and with a reasonable basis in fact and law, it had no extracontractual duty to determine the existence of coverage, by bringing a declaratory judgment action or otherwise. If accepted as the law, Brown's theory that the Company's failure to ascertain its obligations under the contract constituted negligence would convert every action for breach of promise into a tort suit.

Because the Insurance Company had no duty to act apart from the contract, the circuit judge correctly sustained the demurrer to the negligence cause of action.

## II.

Brown's third cause of action alleges a bad faith refusal to pay Atkins's claim in willful and conscious disregard of Brown's rights under the policy. The circuit judge also sustained the demurrer to this cause of action.

During the pendency of this appeal, the Supreme Court decided *Nichols v. State Farm Mutual Automobile Ins. Co.,* 279 S. C. 336, 306 S. E. (2d) 616 (1983). Brown contends *Nichols* controls this case. The Insurance Company argues *Nichols* is distinguishable.

In *Nichols,* the Supreme Court held that if an insured can demonstrate bad faith or unreasonable refusal by an insurer to pay first-party benefits due under a mutually binding insurance contract, he can recover damages not limited to the face amount of the contract. The Court further held that if the insured can demonstrate the insurer's actions were willful or in reckless disregard of the insured's rights under the contract, he can recover punitive damages.

The first branch of the *Nichols* holding modifies the familiar rule that damages for breach of an obligation to pay a sum of money are generally limited to the amount due plus interest. *See Hutson v. Continental Assurance Co.,* 269 S. C. 322, 237 S. E. (2d) 375 (1977); *Bethel v. Salem Improvement Co.,* 93 Va. 354, 25 S. E. 304 (1896). Where insurance contracts

---

[2] We express no opinion as to whether liability might exist under the *Tiger River* doctrine. See n. 1, *supra.*

are concerned, *Nichols* holds that damages are not so limited if the refusal to pay is unreasonable or in bad faith. Instead, the insured may recover consequential damages caused by the insurer's refusal to pay without regard to the policy limits.

This exception to the general rule is justified by the special nature of a contract of insurance. As the *Nichols* opinion noted, insurance contracts differ from ordinary, negotiated commercial contracts. They are not the result of a bargained for exchange. They are marketed and purchased as a standardized product. Subject to certain regulatory requirements, the insurer unilaterally decides what the terms of the contract will be. Although the insured, like the purchaser of an automobile, may have some standardized options to choose from, he does not truly bargain over the terms of coverage. Ordinarily, the insured conceives himself to be purchasing a package of "protection," including the services of the insurer in processing claims under the policy. In a very real sense, therefore, the relation of insurer to insured is more than a simple debtor-creditor relationship. A rule limiting damages to the amount due under the policy plus interest does not reflect the realities of the insurance market.

Although *Nichols* approved recovery of consequential damages caused by bad faith refusal to pay first-party benefits, the opinion did not undertake to define the scope of the rule it announced. On this appeal, the Insurance Company argues that the *Nichols* case should be limited to its own facts.

The Company maintains this case is distinguishable from *Nichols* and the decisions following it.[3] In those cases, the existence of a valid contract of insurance was admitted by the insurer. Here, the Insurance Company points out, the existence of the contract is in dispute. In such cases, it argues, the *Nichols* rule does not apply.

If the insured proves bad faith or unreasonableness by the insurer, we see no basis to distinguish between cases where the insurer denies the existence of the contract of insurance

---

[3] *Carter v. American Mutual Fire Ins. Co.*, 279 S. C. 367, 307 S. E. (2d) 225 (S. C. 1983); *Wilson v. Ins. Co. of North America*, 281 S. C. 76, 313 S. E. (2d) 640 (S. C. App. 1984); *Carolina Bank & Trust Co. v. St. Paul Fire & Marine Co.*, 279 S. C. 576, 310 S. E. (2d) 163 (S. C. App. 1983).

and cases where the contract is admitted by the insurer refuses to pay the claim. An insurer who denies coverage does so at its own risk; if a mutually binding contract exists and the denial is found to be in bad faith or unreasonable, the insurer is liable for consequential losses caused by its breach of the express and implied obligations of the contract without regard to the policy limits. An insurer who wrongfully denies the existence of the contract should be in no better position than one who admits the contract but refuses without reasonable justification to pay benefits. Both have breached their obligations of good faith and fair dealing under the contract. Both should be held liable for the breach.

Since liability is founded on the contract,[4] the insurer

---

[4] *Nichols* described the cause of action for breach of the implied covenant of good faith and fair dealing as a "tort" action. The subsequent decisions of *Richard Carter v. American Mutual Fire Insurance Company*, 279 S. C. 367, 307 S. E. (2d) 225 (S. C. 1983) *(Carter I)* and *Diane Carter v. American Mutual Fire Insurance Company*, 279 S. C. 368, 307 S. E. (2d) 227 (S. C. 1983) *(Carter II)*, characterized the action as bad faith refusal to pay benefits "due under an insurance contract" without calling it a tort. In *Carter II*, the Court refused to extend the *Nichols* doctrine to claims by a person who is not a party to or a named insured under the contract. This requirement of privity suggests a contractual rather than a delictual basis for the action. As one commentator has noted, a claim for bad faith does not fit easily under the tort rubric, because it obliterates the settled distinction between misfeasance and nonfeasance which separates tort from breach of promise. Holmes, *Is There Life After Gilmore's Death Of Contract? — Inductions From A Study Of Commercial Good Faith In First-Party Insurance Contracts*, 65 CORNELL L. REV. 330, 368 (1980). The principal theoretical objection to treating the *Nichols* cause of action as sounding in contract is that the covenant of good faith and fair dealing is nonconsensual, i.e., it does not result from a bargained agreement of the parties but is implied as a matter of law. This objection loses much of its force in the context of insurance contracts. Few, if any, terms in an insurance policy are bargained. Many express terms (e.g., premium rates, minimum liability coverage, grace periods) are prescribed by law and cannot be varied by the parties. *See* Sections 38-37-530 and -550 (rate approval); 56-9-820 (minimum coverage); 38-37-1450 (cancellation notice), Code of Laws of South Carolina, 1976. Furthermore, nonconsensual terms are a commonplace in the modern law of contract. For example, in contracts for the sale of goods the law implies a warranty of merchantability and prevents the parties from limiting consequential damages for injury to the person in the case of consumer goods. *See* Sections 36-2-314 and 36-2-719(3), Code of Laws of South Carolina, 1976. It is not anomalous, therefore, to treat the cause of action for breach of the implied covenant of good faith and fair dealing in an insurance contract as an action in contract rather than tort. This approach is consistent with the holding in *Nichols* and harmonizes it with *Carter II*. The true significance of *Nichols* is that it expands the contractual remedy available to an insured who can prove bad faith refusal to pay a valid claim under the contract.

■ is liable for whatever consequential damages follow as a natural consequence and proximate result of the breach. *Hutson v. Continental Assurance Co., supra; Fuller v. Eastern Fire & Casualty Ins. Co.*, 240 S. C. 75, 124 S. E. (2d) 602 (1962). Therefore, if a reasonable person in the insurer's position with its knowledge could have reasonably foreseen the additional damages resulting from the refusal to pay a claim under the contract, those damages are recoverable. *See Sitton v. McDonald*, 25 S. C. 68, 60 Am. Rep. 484 (1885).

As with special damages in any contract action, the ■ ■ plaintiff must specially plead and prove consequential losses flowing from breach of the implied covenant of good faith and fair dealing. *See Kline Iron & Steel Co. v. Superior Trucking Co.*, 261 S. C. 542, 201 S. E. (2d) 388 (1973); *M'Daniel v. Terrell*, 10 S. C. L. (1 N. & McC.) 343 (1818); *Fuller v. Eastern Fire & Casualty Ins. Co., supra* (attorney's fees incurred in defending third-party claim not recoverable as damages because not pleaded and proved). In this case, Brown has specifically pleaded consequential losses as a result of the Insurance Company's wrongful denial of insurance coverage. He alleges that he has been forced to retain an attorney to defend against Atkins's suit and that he has lost income as a result of suspension of his operator's license for failure to maintain mandatory third-party liability insurance on his automobile. It is reasonably foreseeable that an insured will incur these additional economic losses if a valid claim is not promptly paid by the insurer. Indeed, an important purpose for insuring against third-party liability is to avoid the financially ruinous consequences of lawsuits or other economic losses.

Just as the first branch of *Nichols* creates an exception to the rule limiting damages to the amount due under the policy, so the second branch of its holding creates an exception to the rule that punitive damages may not normally be recovered for breach of contract. *See e.g., Roberts v. Fore*, 231 S. C. 311, 98 S. E. (2d) 766 (1957).

Our law has long recognized that a breach of contract ■ with fraudulent intent and accompanied by a fraudulent act will give rise to a claim for punitive damages in contract. *See Welborn v. Dixon*, 70 S. C. 108, 49 S. E. 232 (1906); *Williams v. Metropolitan Life Ins. Co.*, 173 S. C. 448,

176 S. E. 340 (1934); *see also Peeples v. Orkin Exterminating Co.*, 244 S. C. 173, 135 S. E. (2d) 845 (1964); *Ross v. American Income Life Ins. Co.*, 232 S. C. 433, 102 S. E. (2d) 743 (1958) (action for breach of contract accompanied by fraudulent act is one *ex contractu*). *Nichols* recognizes an additional exception by permitting punitive damages if an insurer refuses to pay a first-party claim in willful or reckless disregard of the insured's rights under the policy. In order to recover punitive damages, the insured must prove the insurer acted with intent to injure him or with a conscious indifference to his rights. If such proof is forthcoming, we perceive no reason to limit recovery of punitive damages to cases in which the contract is admitted by the insurer. We therefore hold that punitive damages may be recovered in an action on the contract, if the insurer's denial of the contract, in addition to being in bad faith or unreasonable, is willful or in reckless disregard of the insured's rights under the policy.

Like the first branch of the *Nichols* rule, this exception is justified by the special nature of insurance contracts. As the Court observed in *Nichols*, unless it is held liable for such conduct, an insurance company can, with complete impunity, deny any claim it wishes, whether for valid reasons or not. The threat of punitive damages provides a suitable deterrent for willful withholding of benefits due under the contract.

In summary, we hold that the allegations of Brown's third case of action state a claim for actual and punitive damages for the Insurance Company's bad faith refusal to indemnify Brown for a third-party claim in willful or reckless disregard of his rights under the policy. For this reason, the judgment of the circuit court sustaining the demurrer to the third cause of action is reversed.

For the purposes of this decision, we have assumed, as Brown alleges, that the policy was in full force and effect at the time of the accident. On an appeal from the sustaining of a demurrer we are, of course, not concerned with the possible difficulty the plaintiff may have in proving the allegations of the complaint.

Affirmed in part; reversed and remanded in part.

SANDERS, C. J., and SHAW, J., concur.