THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 
 Norman C. Hartsel, as Personal
 Representative of the Estate of Bennett W. Hartsel, Norman C. Hartsel, as
 Personal Representative of the Estate of Mary E. Hartsel, and Norman C.
 Hartsel, Individually, Appellants,
 
 
 
 
 

v.

 
 
 
 
 Selective Insurance Company of
 South Carolina, Respondent.
 
 
 
 
 

Appeal From Charleston County
R. Markley Dennis, Jr., Circuit Court Judge

Unpublished Opinion No. 2011-UP-226
Heard October 5, 2010  Filed May 18, 2011

AFFIRMED

 
 
 
 Michael S.
 Seekings, of Charleston, for Appellants.
 William L.
 Howard and Russell G. Hines, both of Charleston, for Respondent.
 
 
 

FEW, C.J.:  The
 plaintiff filed this lawsuit against Selective Insurance Company in three
 separate capacities alleging the violation of three distinct duties in five
 different causes of action.  We agree with the circuit court that none of them
 are actionable in this case as a matter of law.  We affirm the circuit court's
 order granting the motion to dismiss.
I.  Facts and Procedural History
Bennett Hartsel ("Bennett")
 and Brett Jones ("Jones") were tragically killed in a one-car
 accident.  The families were uncertain initially as to which of the young men
 was driving, and each estate filed a lawsuit against the other for wrongful
 death and survival.  The car was insured by Selective Insurance Company.  Selective
 hired an engineer who concluded that Jones was driving.  Selective settled the lawsuit
 by Jones' estate against Bennett's estate ("the Jones action") for
 $185,000.00.  The parties reached a high/low settlement agreement[1] on Bennett's estate's claim against Jones' estate ("Bennett's action"),
 and the case proceeded to trial.  The jury returned a verdict for $50,000.00.  
Bennett's father Norman
 C. Hartsel ("Norman") filed this lawsuit against Selective ("the
 Selective action") in three capacities: (1) as personal representative of
 Bennett's estate, (2) as personal representative of the estate of Mary E.
 Hartsel, who died after the accident for unrelated reasons, and (3) in his
 individual capacity.  Norman filed an amended complaint in which he alleged the
 violation of the duty to defend, the duty to indemnify and the duty of good
 faith and fair dealing in causes of action for breach of contract, breach of
 fiduciary duty, bad faith, improper claims practices, and negligence.  
II. Analysis
The duties of an
 insurance company arising out of a liability policy in any particular situation
 are governed primarily by two factors: (1) the nature of the underlying
 litigation, and (2) the identity of the parties to the insurance contract.  We
 discuss each of those as a backdrop for our conclusion as a matter of law that
 Selective cannot be liable to Norman in any of the capacities in which he
 brought this lawsuit on any of the theories of recovery asserted.
a.  The Nature of the Underlying Litigation
We first discuss the
 Jones action.  Jones alleged that Bennett was the driver of the car, and that Bennett's
 negligence caused damages associated with the death of Jones.  Because
 Selective insured the car, Bennett's estate is insured under the policy.  See S.C. Code Ann. § 38-77-30(7) (2002) ("Insured" includes "any
 person who uses with the consent, expressed or implied, of the named insured
 the motor vehicle to which the policy applies . . . or the personal
 representative . . . .").  Selective therefore had a duty to defend
 Bennett's estate, and a duty to indemnify Bennett's estate for any judgment
 Jones' estate may obtain up to the limits of liability set forth in the
 policy.  Sloan Const. Co. v. Central Nat. Ins. Co. of Omaha, 269 S.C.
 183, 186, 236 S.E.2d 818, 820 (1977) (recognizing duty to defend and duty
 indemnify as "two insuring provisions of major significance"); Nationwide
 Mut. Ins. Co. v. Tate, 313 S.C. 444, 447, 438 S.E.2d 266, 268 (Ct. App.
 1993) (recognizing duty to defend and indemnify).  Norman was the personal
 representative of Bennett's estate.  Therefore, Selective's two duties in the
 Jones action were owed to Norman in his capacity as personal representative of
 Bennett's estate.  
No other person or entity
 connected with the Selective action stood to gain or to lose in the Jones
 action.  From Norman's standpoint, the only way in which he could be affected
 by the Jones action was in his capacity defending the Jones action as personal
 representative of Bennett's estate.  Mary was even farther removed from the
 Jones action.  Neither Norman nor Mary could ever be called upon to pay any
 judgment imposed on Bennett's estate as a result of the Jones action.  Therefore,
 the only duties owed by Selective arising out of the Jones action were the duty
 to defend and to indemnify Bennett's estate, acting through Norman as its
 personal representative.
In Bennett's action,
 Bennett alleged Jones was the driver, and his negligence caused damages
 associated with Bennett's death.  Selective insured the car, and Jones was a
 permissive driver.  Therefore, Selective owed a duty to defend Jones' estate
 and to indemnify it for any judgment Bennett's estate may obtain up to the
 policy limits.  See S.C. Code Ann. § 38-77-30(7).  Just as above, no
 other person connected with Bennett's action stood to gain or to lose in
 Bennett's action.  While Norman and Mary are wrongful death beneficiaries[2] and beneficiaries of Bennett's estate, and in those capacities might stand to
 gain indirectly from a favorable outcome of Bennett's action, the actual right
 to recover in those actions belongs exclusively to the personal representative,
 not to Norman and Mary.  See Hopkins v. Fidelity Ins. Co., 240
 S.C. 230, 233, 125 S.E.2d 468, 469 (1962) (holding for wrongful death or
 survival, a parent's "entitlement to compensation
 was not in her own right, but as beneficiary of the statutory cause of action");
 S.C. Code Ann. § 15-5-90 (2005) ("Causes of action for and in respect to .
 . . any and all injuries to the person . . . shall survive both to and against
 the personal or real representative . . . of a deceased person . . . any law or
 rule to the contrary notwithstanding.").   Therefore, neither
 Norman nor Mary had any stake in Bennett's action except in their deriviative
 capacities as beneficiaries under the wrongful death statute and as
 beneficiaries of Bennett's estate.
In summary, as to both
 the Jones action and Bennett's action, the only person or entity involved in the
 Selective action who stood to gain or lose was Norman, but only in his capacity
 as personal representative of Bennett's estate.

b.  The Parties to the Insurance Contract
The insurance policy
 lists four named insureds: (1) Reserve Associates Limited, (2) CB Reserve
 Homeowners Association, (3) Mary E. Hartsel, and (4) Norman C. Hartsel, LPA.  Reserve
 Associates Limited and CB Reserve Homeowners Association are apparently
 entirely unrelated to the Jones and Bennett actions, and the record contains no
 information about them.  
Mary is a party to the
 insurance contract.  Selective owed her duties arising out of the contract,
 including the duty of good faith and fair dealing.  Doe v. South Carolina
 Med. Mal. Liab. Joint Underwriting Assoc., 347 S.C. 642, 649, 557 S.E.2d
 670, 674 (2001) ("there is an implied covenant of good faith and fair
 dealing in every insurance contract 'that neither party will do anything to
 impair the other's rights to receive benefits under the contract'"); Tadlock
 Painting Co. v. Maryland Cas. Co., 322 S.C. 498, 501, 473 S.E.2d 52, 54
 (1996) ("Implicit . . . is the extension of a duty of good faith and fair
 dealing in the performance of all obligations undertaken by the insurer
 for the insured.").  As explained above, however, Mary does not
 stand to gain or lose in respect to either the Jones action or Bennett's
 action, and thus Selective had no occasion to act upon its duties to her. 
 Because Selective had no duty to Mary in connection with either the Jones
 action or Bennett's action, Selective cannot be liable to Norman acting as her
 personal representative.   
Norman C. Hartsell, LPA,
 ("the LPA") is also a party to the insurance contract.  However, the
 LPA is even farther removed from the Jones action and Bennett's action than
 Mary.  The LPA does not have any interest whatsoever, not even a derivative
 interest, in either of the underlying lawsuits.  Because the LPA has no
 personal interest in the lawsuit, it has no claim for a violation of any duty
 Selective owed arising out of the lawsuit.  
Norman in his individual
 capacity claims that he is party to the insurance contract.  While the policy
 provides that members and partners of corporate named insureds such as the LPA
 are also insureds, that provision applies "only with respect to the conduct
 of your business."  The Amended Complaint does not allege any connection
 between the accident and the conduct of the LPA's business, nor is there any
 allegation that Norman is conducting business in his capacity as personal
 representative of his son's estate.  Therefore, Norman is not a party to the
 insurance contract in connection with the Selective action.  
c.  Summary of the Parties
None of the parties to
 the Selective policy have any involvement in either of the underlying lawsuits,
 and none of the participants in the underlying lawsuits have any relationship
 to the Selective policy.  Therefore, as explained below, there can be no
 liability by Selective to Norman for any of the theories of recovery asserted
 in this litigation.
III.  Breach of Contract
Because Norman is not a party to the insurance contract in his
 capacity as personal representative of Bennett's estate or in his individual
 capacity in connection with the underlying lawsuits, he has no claim for breach
 of contract in those capacities.  In his capacity as personal representative of
 Mary's estate, he does represent a party to the contract.  However, Mary has no
 individual interest in the Jones action or Bennett's action.  Therefore she has
 no claim for breach of contract.  The circuit court was correct to dismiss the
 breach of contract cause of action.
IV.  Breach of Fiduciary Duty
The amended complaint
 alleges the existence of a fiduciary duty under the insurance contract. 
 However, an insurance relationship does not ordinarily give rise to a fiduciary
 duty.  Pitts v. Jackson Nat'l Life Ins. Co., 352 S.C. 319, 331, 574
 S.E.2d 502, 508 (Ct. App. 2002).  Other than the conclusory allegation that
 Selective "was in a superior position with superior knowledge" and
 the plaintiffs "were at all times in a position to rely on the insurance
 contracts," the plaintiffs do not allege any special circumstances which
 might give rise to a fiduciary duty.  See Pitts, 352 S.C. at
 330-33, 574 S.E.2d at 507-09 (court examined the relationship to determine
 whether special circumstances existed to support the allegation of a fiduciary
 duty).  Because no fiduciary duty existed between any of the parties, the
 circuit court was correct to dismiss the breach of fiduciary cause of action.  
V.  Bad Faith
An insurance company's
 duty of good faith arises out of the insurance contract.  Under the Tyger
 River doctrine, the insurance company owes a duty of good faith to satisfy
 its duties to defend and indemnify within policy limits.  Tyger River Pine
 Co. v. Maryland Casualty Co., 170 S.C. 286, 170 S.E. 346, 348 (1933) (cause
 of action recognized for bad faith failure to pay benefits to the insured). 
 Only a policy holder may bring a cause of action for bad faith refusal to pay
 benefits under an insurance policy.  See Kleckley v. Northwestern Nat'l
 Cas. Co., 338 S.C. 131, 134, 526 S.E.2d 218, 219 (2000) ("A tort
 action for an insurer's bad faith refusal to pay benefits does not extend to
 third parties who are not named insureds."); Cock-n-Bull Steak House,
 Inc. v. Generali Ins. Co., 321 S.C. 1, 6, 466 S.E.2d 727, 730 (1996)
 ("The elements of an action for bad faith refusal to pay benefits under an
 insurance contract include (1) the existence of a mutually binding contract of
 insurance between the plaintiff and the defendant . . . .").  Even when
 the supreme court extended the bad faith doctrine to claims by "an insured against his or her insurer for consequential
 damages allegedly suffered because of the insurer's bad faith handling of third
 party claims," the court stressed the duty of good faith is grounded in
 the insurance contract.  Tadlock Painting, 322 S.C. at 504, 473 S.E.2d at
 55 (1996) ("[T]he insured also is entitled to receive the additional
 security of knowing that she will be dealt with fairly and in good faith.  That
 security comes not from the express contractual terms, but from the implied
 covenant of good faith and fair dealing."  322 S.C. at 502, 473
 S.E.2d at 54 (quoting Deese v. State Farm Mut. Auto. Ins. Co.,
 838 P.2d 1265, 1269 (Ariz. 1992) (emphasis omitted))).  
If the plaintiff in a bad
 faith action is not a party to the insurance contract, there can be no action
 for bad faith.  Because Norman is not a party to the insurance contract, Selective
 does not owe him a duty of good faith.  He cannot recover as a matter of law.  Mary
 is a party to the contract, and for that reason Selective does owe her a duty
 of good faith.  However, because Mary had no interest in the Jones action or
 Bennett's action, the duty of good faith was not implicated.    
Norman argues in his
 brief that "this is a case of first impression under S.C. law."  We
 disagree.  The absolute prerequisite to an action for bad faith is the
 existence of a duty of good faith.  As that duty arises only pursuant to an
 insurance contract, a non-party to a contract will never be allowed to assert a
 claim for bad faith.  The circuit court was correct to dismiss the bad faith
 cause of action.
VI.  Improper Claims Practices
"Third parties do
 not have a private right of action [for improper claims practices.]"  Master
 Clean, Inc. v. Star Ins. Co., 347 S.C. 405, 415, 556 S.E.2d 371, 377
 (2001).  Mary is the only plaintiff who is party to the insurance contract.  Because
 Mary does not have any interest in either of the underlying lawsuits, nor any
 potential liability, she also does not have a claim for improper claims
 practices.  The circuit court was correct to dismiss the improper claims
 practices cause of action.
VII. Negligence
Norman cannot recover
 from Selective for negligence in any of the capacities in which he sues.  An
 insurance company owes no duty of due care to a non-insured making a claim
 against the insurer.  See Kleckley v. Northwestern Nat'l Cas. Co.,
 330 S.C. 277, 286, 498 S.E.2d 669, 674 (Ct. App. 1998) ("[t]he duty of the
 insurance company to use ordinary care . . . arises out of the . . . contract or
 policy of insurance . . . .").  Further, no right of recovery exists in
 negligence by an insured.  Kennedy v. Henderson, 289 S.C. 393, 397, 346
 S.E.2d 526, 528 (1986) ("[n]o cause of action exists against an insurer
 for negligence in failing to determine coverage or adjust a third party claim
 against the insured under an insurance policy.").  Because Selective owes
 no duty of due care to Norman in any of the capacities in which he sued, the circuit
 court was correct to dismiss the negligence cause of action.
VIII. Conclusion
The circuit court was
 correct to dismiss the complaint because it failed to state any cause of
 action.
AFFIRMED.
HUFF, J., concurs.
GEATHERS, J., concurs
 in result only.

[1] The high/low settlement agreement provided that
 Selective would pay on behalf of the Jones estate to the Hartsel estate a
 minimum of $200,000.00 and a maximum of $1,000,000.00.
[2] S.C. Code Ann. § 15-51-20 (2005 & Supp. 2009).